TERENCE JOHN ROGERS, APPELLEE, V. EVELYN ROSE ROGERS, APPELLANT.
435 N.W.2d 915

Filed February 24, 1989.    No. 87-863.

Ronald J. Albin for appellant.

R.D. Stafford, of Brogan & Stafford, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The respondent wife has appealed from the judgment of the district court, which entered a decree dissolving the marriage, awarding alimony, and dividing property. She alleges as errors (1) the finding by the trial court that the marriage was irretrievably broken, (2) the inadequacy of the alimony award, and (3) the distribution of the property.

In appeals involving actions for dissolution of marriage, the Supreme Court reviews the record de novo to determine if the district court abused its discretion. In the absence of such an abuse, the trial court's findings will not be reversed. When the evidence conflicts, this court will consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts over another. *Zavitka v. Zavitka*, 228 Neb. 267, 421 N.W.2d 798 (1988).

Terence John and Evelyn Rose Rogers were married on November 8, 1958. Three children were born during this marriage. All three were emancipated at the time petitioner filed for divorce. The petition for dissolution of the marriage was filed on March 17, 1987.

Petitioner husband is 48 years old and is a trooper with the Nebraska State Patrol. He plans to continue working as a trooper until age 55, when he will have 30 years of service. At that time, he will be eligible to receive a monthly pension equal to 75 percent of his average monthly salary for the 3 years preceding his retirement. He also plans to continue working after retiring from the State Patrol in order to qualify for Social Security benefits.

At the time of trial, petitioner was earning approximately $2,200 per month. His monthly take-home pay was approximately $1,500 after taxes, insurance, and $300 in savings were deducted. His monthly living expenses were estimated to be about $800.

Respondent is 47 years old and currently works as a teacher's aide in Norfolk through Educational Service Unit No. 8. For the major portion of the marriage she did not work outside the home. She does not have a college degree and has no desire to return to college now. Further, she has no special skills which would enable her to obtain employment.

Respondent returned to work in December of 1986. Her position with ESU No. 8 is not a permanent position, and she contracts for only 1 year at a time. Further, she does not receive any pay during the time school is not in session, although she did work part time for 6 weeks during the summer. She is paid $4.30 per hour and has an average monthly take-home income of approximately $500. She also contributes $182 per month to an annuity account, which is available to her only when she quits, retires, or is fired. She estimates her monthly expenses to be approximately $1,258.

Both parties testified as to their health problems. Respondent suffers from Raynaud's disease (a constriction of the blood vessels in the extremities, which causes discoloration and some pain) and varicose veins. Petitioner has arthritis and sees a chiropractor occasionally for back problems connected with a work-related injury.

At trial on August 4, 1987, petitioner stated it was his opinion that the marriage was irretrievably broken, that all efforts to reconcile the differences of the parties had failed, and that it was not worth pursuing further reconciliation attempts. He admitted the couple had not sought formal counseling, but stated that they had attempted to work out their differences between themselves and had failed. Respondent testified that, in her opinion, the marriage was not irretrievably broken and that they had not made reasonable efforts to reconcile their differences. She further stated that she did not want a divorce from her husband.

Applying the rule from *Zavitka*, we find that the record supports the conclusion of the trial court that the marriage was irretrievably broken, and it did not abuse its discretion in that regard.

Both parties introduced evidence regarding the valuation of the marital property, over which there was little disagreement. The marital property of the parties was divided as follows:

To petitioner:

| | |
|---|---|
| 1978 Ford F150 truck | $ 3,600.00 |
| 1979 Road Ranger trailer | 3,500.00 |
| 1974 truck camper top | 400.00 |
| Norwest Bank checking account | 2,279.50 |

| Nebraska State Employees Credit | |
|---|---|
| Union account | 6,268.00 |
| IRA, Woodmen Accident & Life | 12,559.00 |
| Retirement account, State of | |
| Nebraska | 46,582.00 |
| Total | $ 75,188.50 |

| To respondent: | |
|---|---|
| House | $ 45,000.00 |
| Less outstanding mortgage | (13,000.00) |
| 1980 Datsun automobile | 3,000.00 |
| Norwest Bank checking account | 776.50 |
| Norwest Bank savings accounts (2) | 10,562.00 |
| Certificate of deposit, | |
| Norwest Bank | 16,300.00 |
| Loans due from children | 4,350.00 |
| Total | $ 66,988.50 |

In addition, each party was awarded one-half of the artifact collection, and certain other items of personal property were awarded variously to the two parties, over which award there can be no reasonable dispute.

The above-described property constituted the whole of the marital assets except that the $8,200 difference in the award was attributed to a cash inheritance from petitioner's mother in 1984. Petitioner also received between $9,400 and $9,600 as settlement for a workers' compensation claim, but there is no argument between the parties that this sum should not have been included in the marital estate.

Finally, petitioner was ordered to pay respondent $300 per month in alimony until the death of either party or until respondent remarried.

There is no claim by respondent that the distribution of property was unfair; however, she contends that the district court erred in awarding her the marital residence instead of cash. It is her position that the house will be difficult to sell and that she needs the cash to invest so she can use the interest from the investments to live on during the months she does not work.

Strangely enough, it was petitioner's testimony that

respondent and he should evenly split the checking account (he received part of the Norwest Bank checking account in the amount of $2,279.50, and she received the remaining amount of $776.50); that she should receive the savings account (which she did), the State Employees Credit Union account (which he was awarded, in the amount of $6,268), the IRA with Woodmen Accident & Life in the amount of $12,559 (which he was awarded), the balance of the certificate of deposit after paying petitioner the proceeds from his mother's estate (which amount was considered by awarding petitioner $8,200 more in property than respondent), and the loan to the children (which was awarded to respondent). Petitioner also suggested at one time that respondent be awarded the house and that he would make the house payments of some $333 per month. He also thought she should get $300-per-month alimony, but then he changed that to suggest that he did not propose both to give her alimony and make the house payments.

The testimony of petitioner shows that he plans to continue working for another 5 or 6 years, at which time he will retire and his income level—pension rather than salary—will reduce by 25 percent. However, it is his intention to continue working in some other line of work so that he can qualify for Social Security benefits.

It is apparent that at the time of his testimony, petitioner believed that his wife should have approximately $20,000 more in cash than she was actually awarded.

The prospects for future earnings for petitioner are quite bright; those of the respondent are dark for the foreseeable future. She is going to have a difficult time supporting herself on a limited earned income plus alimony payments and still making the house payments. A more reasonable award of alimony would be $500 per month during the time that petitioner continues to be employed by the Nebraska State Patrol; i.e., until he reaches the retirement age of 55, or before the time respondent dies or remarries. Upon his reaching retirement age, the alimony payments shall revert to $300 per month under the same terms and conditions as originally provided for in the decree of the district court.

In all other respects, we find no abuse of discretion on the

part of the trial court, and its judgment is affirmed as modified herein. Petitioner is ordered to pay $1,000 toward respondent's attorney fees.

AFFIRMED AS MODIFIED.